# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ERIC LYONS, | : | Civil No. 1:12-CV-1357 |
| --- | --- | --- |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Carlson) |
| JOHN WETZEL, et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case

In this action, Eric Lyons, an inmate housed at the State Correctional Institution at Dallas has brought claims under 42 U.S.C. § 1983 against a number of corrections officials and employees, alleging that these defendants violated his rights to due process and equal protection under the law by depriving him of certain property and requiring that he remain in segregated housing without justification. Lyons also claims that some of the defendants have retaliated against him for his exercise of protected First Amendment activity, namely the filing of grievances with prison officials to remedy what Lyons perceived as ongoing and persistent violations of his rights. (Doc. 19, Am. Compl.)

On February 20, 2013, the plaintiff filed a motion styled as a motion for a preliminary injunction. (Doc. 24.) In this motion, which was not accompanied by a supporting brief, Lyons invited the Court to issue orders compelling prison officials and staff to furnish him with a certain number of sheets of bond paper and carbon paper that he claims are necessary for him to litigate effectively multiple lawsuits that he is currently prosecuting, including the instant action. (Doc. 24.) The plaintiff also claimed that he had filed a grievance relating to this latest complaint against prison officials, but that as of February 7, 2013, he had not been provided with a response.[1] (Id.) Although the plaintiff candidly doubted the authority of this Court to order state prison officials to furnish this particular inmate with a certain number of sheets of bond and carbon paper every month, (id.), he nonetheless invited the Court to consider issuing such orders anyway on the grounds that by not providing the plaintiff with 100 sheets of paper, and carbon paper, every month, the prison officials at SCI-Dallas are violating the plaintiff's right of access to the Courts, as recognized and

---

[1] In a reply brief filed in further support of the motion, the plaintiff indicates that his grievance was denied upon initial consideration, and now remains at the "appellate stage". (Doc. 35, at 8.)

2

explained by the United States Supreme Court in Bounds v. Smith, 430 U.S. 817 (1977).[2]

The factual basis for these allegations of misconduct on the part of prison officials justifying preliminary injunctive relief is somewhat unclear, and it is further unclear whether the plaintiff's grievances regarding these charges have been processed and, if so, what resulted from these administrative proceedings. It is clear, however, that these most recent allegations concern matters that are separate and distinct from the plaintiff's substantive claims at issue in this lawsuit, regardless of his efforts to conjoin the issues in his original complaint with the problems stated in his motion for preliminary injunctive relief.[3] Furthermore, many of the issues which Lyons first endeavored to address through this motion for preliminary injunction now seem to be subsumed in a motion to further amend his complaint, (Doc. 45.), a motion as to which the defendants have not yet had an opportunity to respond.

---

[2] Notably, the motion for a preliminary injunction is 11 pages in length. After the plaintiff filed this motion in February, he filed a 13-page motion to stay this litigation on April 11, 2013. (Doc. 33.). Lyons has subsequently filed multiple pleadings in this case, evidencing a full and untrammeled ability to litigate. (Docs. 39, 42, 43, 45, 46.)

[3] Indeed, in another brief, the plaintiff candidly observed "[t]hat is another issue altogether." (Doc. 35, at 6.)

The defendants have, however, filed a response in opposition to this motion for preliminary injunction, which alleges that Lyons has failed to meet the exacting standard for injunctive relief, has not exhausted his administrative remedies with respect to the matters set forth in this motion, and has, in fact, been provided with appropriate legal resources in that he has consistently received his monthly allotment of paper permitted by Department policy, which is represented to be 50 sheets of clean paper and five sheets of carbon paper per month. (Doc. 30.) Thus, the defendants have represented, without qualification, that the plaintiff is being furnished with the paper, carbon paper, writing instruments and materials to which he is entitled under Department of Corrections policies, and which are needed to file documents in this case. The defendants have also represented that if an inmate finds that these provisions are insufficient, indigent inmates are permitted to request additional materials. On the basis of these representations of counsel, stating unequivocally that the plaintiff is being provided with paper, carbons, writing instruments and related materials, the defendants request that this motion for preliminary inunction be denied.

For the reasons set forth below, we agree, and recommend that this motion be denied.

## II. Discussion

### A. Preliminary Injunction Rule 65– The Legal Standard

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an

extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.'" Emile, 2006 WL 2773261, at * 6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir.1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).

Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998);

Kershner, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. §3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary

> relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where an inmate: (1) seeks to enjoin a wide array of non-parties; (2) requests injunctive relief of a presumably permanent nature without first fully exhausting administrative remedies; and (3) requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Each of these aspects of the plaintiff's prayer for injunctive relief presents separate problems and concerns.

For example, an injunction against non-parties, like the injunction sought here, requires a specific legal showing. To the extent that the plaintiff seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996).

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995).

Moreover, where a prisoner-plaintiff seeks injunctive relief of a presumably permanent or enduring nature, the plaintiff's failure to timely exhaust his administrative remedies may have substantive significance since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this

9

requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted). Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court; see, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006), including requests for injunctive relief in a prison context. Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000).

In addition, to the extent that the plaintiff seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of this extraordinary relief. With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4 .

Furthermore, in assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that

11

the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

## B. Lyons' Motion for Preliminary Injunction Fails

Judged against these benchmarks, Lyons' motion for preliminary injunction fails for at least five reasons.

First, it is evident that Lyons has not exhausted his administrative remedies, as he must do prior to seeking extraordinary preliminary injunctive relief in federal court. This failure to exhaust is fatal to the instant motion for preliminary injunction. See Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000).

Second, the motion for injunctive relief is inappropriate since the injunction sought by Lyons demands:

> [R]elief that is not requested or at all related to the . . . claims [in this case]. This is not permissible. See, e.g., Devised v. Herrington, 42 F.3d 470, 471 (8th Cir.1994) ("Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit."); Spencer v. Stapler, Civ. No. 04–1532, 2006 WL 2052704, *9 (D.Ariz. July 21, 2006) ("Plaintiff's motion [for injunctive relief] concerns events that are unrelated to the subject of his complaint and that concerns conduct of persons other than the defendants. Plaintiff's request will therefore be denied."); Westbank

12

Yellow Pages v. BRI, Inc., Civ. No. 96–1128, 1996 WL 255912, * 1, (E.D.La. May 13, 1996) ("A preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not even sought in the underlying action."); Williams v. Platt, 2006 WL 149024, *2 (W.D.Okla. Jan.18, 2006) ("The complaint addresses two matters at the Logan County Jail: (1) the denial of medical treatment between March and June 2001; and (2) the promotion of an inmate assault on November 8, 2001. In his requests for injunctive relief, the plaintiff addresses matters at a separate facility, involving harassment, conspiracy, denial of a bottom bunk, and confiscation of legal materials. A preliminary injunction would be inappropriate to address wrongs wholly unrelated to the complaint.") (footnotes omitted)."

Banks v. Good, CA 06-253, 2011 WL 2437061 (W.D. Pa. Apr. 20, 2011) report and recommendation adopted, CA 06-253, 2011 WL 2418699 (W.D. Pa. June 14, 2011).

Third, in this motion Lyons appears to seek to enjoin individuals who are not parties to the instant lawsuit. This effort, in turn, runs afoul of the:

> "[G]eneral rule that a court may not enter an injunction against a person who has not been made a party to the case before it." Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 96 F.3d 1390, 1394 (Fed.Cir.1996) (citing Scott v. Donald, 165 U.S. 107, 117, 17 S.Ct. 262, 41 L.Ed. 648 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit.")). Indeed, courts have refused to issue injunctions against non-parties. See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC, 523 F.Supp.2d 328, 334–35 (S.D.N.Y.2007) (the court denied the defendant's motion for a preliminary injunction against the Federal Energy Regulatory Commission because it was not a party to the suit and it was not an "officer, agent, servant, employee, or attorney" of any party); Williams v. Platt, Civ. No. 03–281–C, 2006 WL 149024 at *2 (W.D.Okla. Jan.18, 2006) (unpublished) (the court denied the plaintiff's motion for an injunction noting that he had "not established a relationship between the preliminary injunction and the underlying civil rights claim, and he

13

> seeks to bind non-parties without any suggestion of active concert or participation by the named defendants"). Moreover, once a court has issued an injunction against a party, that injunction may only be enforced against non-parties that are officers, agents, servants, employees, or attorneys of a party, or ones that are in active concert or participation with such non-parties or the party itself. Fed.R.Civ.P. 65(d)(2). To be bound by an injunction, a "non-party must have constructively had his day in court." Harris County, Tex. v. CarMax Auto Superstores Inc., 177 F.3d 306, 314 (5th Cir.1999) ("the relevant inquiry is ... whether [the non-party] had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction.") (citation omitted) (emphasis in original).

Banks v. Good, CA 06-253, 2011 WL 2437061 (W.D. Pa. Apr. 20, 2011) report and recommendation adopted, CA 06-253, 2011 WL 2418699 (W.D. Pa. June 14, 2011).

Fourth, Lyons has not shown a likelihood of success on the merits of his claims. In the past, inmates like Lyons have frequently sought preliminary injunctive relief compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit. Yet, such, requests, while often made, are rarely embraced by the courts. Instead, courts have routinely held that prisoner-plaintiffs are not entitled to use a motion for preliminary injunction as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits. See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa. Oct. 7, 2008)(denying inmate preliminary

14

injunction); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa.. Sept. 24, 2006) (denying inmate preliminary injunction). In particular, state inmates in Pennsylvania have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to allow them greater access to legal materials. Yet, these requests, while frequently made, have rarely been embraced by the courts. See, e.g., Kershner v. Mazurkiewicz, supra; Edmonds v. Sobina, 296 F.App'x 214, 216 n. 3 (3d Cir. 2008); Barnes v. Quattlebaum, No. 08-2197, 2009 WL 678165 (D.S.C. March 12, 2009); Clay v. Sobina, No. 06-861, 2007 WL 950384 (W.D.Pa. March 26, 2007); Wesley v. Vaughn, No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001). Instead, these courts have repeatedly upheld as reasonable prison policies concerning access to, and the storage of, legal materials finding that these policies do not unduly infringe upon inmates' rights to petition the courts. Id. Given this case law, Lyons has failed to show a likelihood of success on the merits that prison officials violate his rights when they provide him legal materials in accordance with their own policies and procedures. Therefore, his motion for preliminary injunction should be denied.

Nor can Lyons demonstrate a likelihood of success on the merits of any access-to-the-courts claims. Lyons faces an exacting burden in advancing these claims. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).

As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id.,

16

> at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts," Lewis v. Casey, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means.

In this case, Lyons simply has not shown actual concrete prejudice to him in the litigation of a particular case, the essential prerequisite to a constitutional claim in this setting. Quite the contrary, the record affirmatively reveals that Lyons has been an active, indeed a prolific litigator, who has filed numerous pleadings without any apparent delay or outside impediment. Since it appears that Lyons has enjoyed

17

full and untrammeled access to the courts, he cannot demonstrate a likelihood of success on this particular constitutional claim, a claim that lies at the heart of this motion for preliminary injunction.

Finally, we also note that granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner, could harm both the defendants' and the public's interest. In this prison context, the defendants' interests and the public's interest in penological order could be adversely effected if the Court began dictating the treatment for the plaintiff, one inmate out of thousands in the state prison system. Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), also weighs heavily against Lyons in this case.

In sum, in this case Lyons has not exhausted his administrative remedies; has not demonstrated a likelihood of success on the merits; and has not shown that he suffers an irreparable harm. Moreover, this motion is procedurally flawed, and granting this extraordinary relief could harm the public's interest and the interests of the opposing parties. Therefore, an assessment of the factors which govern issuance

of such relief under Rule 65 of the Federal Rules of Civil Procedure all weigh against Lyons and compel us to recommend that the court deny the motion.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for preliminary injunction (Doc. 24.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of July 2013.

>*S/Martin C. Carlson*
>Martin C. Carlson
>United States Magistrate Judge